AB:GN
F.#2019R01333

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JUSTIN PORCELLINI and LOURDES VAZQUEZ,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

19-MJ-924

C O M P L A I N T

(21 U.S.C. §§ 841 and 846; 18 U.S.C. § 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

Bryan Mullady, being duly sworn, deposes and states that he is a Task Force Officer with the Drug Enforcement Administration, duly appointed according to law and acting as such.

Approximately on and between March 29, 2019 and October 8, 2019, within the Eastern District of New York and elsewhere, the defendants JUSTIN PORCELLINI and LOURDES VAZQUEZ did knowingly and intentionally conspire to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance, to wit, heroin and 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and/or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of fentanyl, contrary to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C).

(Title 21, United States Code, Sections 841 and 846; Title 18, United States Code, Section 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been involved in the investigation of numerous cases involving the sale, possession, or trafficking of illegal narcotics. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendants' criminal history records; and from reports of other law enforcement officers involved in the investigation.

2. Approximately on and between March 29, 2019 and October 8, 2019, an undercover officer with the NYPD ("UC") met with PORCELLINI on 15 separate occasions and made controlled purchases of heroin in exchange for an agreed-upon amount of cash ("the Controlled Transactions"). All 15 of the Controlled Transactions were video and audio-recorded by the NYPD.

3. The Controlled Transactions followed a similar pattern: before each buy, UC communicated with PORCELLINI on a particular cellphone number. UC and PORCELLINI arranged to meet at an agreed-upon location, and agreed upon the particular amount of drugs that UC would purchase and the cost of those narcotics. After communicating on the phone, UC and PORCELLINI met outside of the agreed-upon location, and UC purchased heroin from PORCELLINI. After each of the Controlled Transactions, UC passed the purchased drugs to other law enforcement officers, who sent the

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

drugs to a forensic lab for testing. The lab tests confirmed that the drugs that UC purchased in each of the Controlled Transactions either contained heroin, or a combination of heroin and fentanyl and/or acetyl fentanyl.

4. Upon information and belief, defendants PORCELLINI and VAZQUEZ did knowingly and intentionally conspire to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance, to wit, heroin and 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and/or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of fentanyl.

5. Specifically, on or about July 17, 2019, UC called PORCELLINI and asked to purchase heroin. PORCELLINI told UC, in sum and substance, that he was not around but directed UC to meet PORCELLINI's wife at the agreed-upon location because "she will take care" of UC. UC traveled to the agreed-upon location, called PORCELLINI, and notified him that he had arrived. PORCELLINI subsequently told UC that he would "call her and let her know." Shortly thereafter, UC saw a woman, who was later identified to be VAZQUEZ, exit the door from the ground level of the Subject Building. VAZQUEZ approached UC and handed UC a cookie box and said, in sum and substance, that "the stuff is inside the box." UC looked inside the box and saw approximately two sleeves of heroin. Upon receipt of the drugs, UC paid VAZQUEZ approximately $1,300.00 in cash. Lab tests indicate that the heroin UC purchased from PORCELLINI and VAZQUEZ contained heroin, fentanyl, and acetyl fentanyl.

6. Upon information and belief, over the course of the 15 Controlled Transactions, UC purchased from the defendants a total of 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and/or 10 grams or more of a mixture

or substance containing a detectable amount of any analogue of fentanyl, and quantities of heroin.

       7.       On October 1, 2019, Magistrate Judge Peggy Kuo signed a search and seizure warrant for the premises located at the defendants' last known address, at 3022 Brighton 8th Street, Apt. B1, Brooklyn, New York.

       8.       On October 10, 2019, at approximately 6:03 a.m., I, along with officers with the New York Police Department, executed the abovementioned search and seizure warrant, and seized approximately $21,600 in cash and approximately 412 glassines of suspected heroin at the premises. Both PORCELLINI and VAZQUEZ were present at the premises when the search warrant was executed, and they were arrested.

       WHEREFORE, your deponent respectfully requests that the defendants JUSTIN PORCELLINI and LOURDES VAZQUEZ be dealt with according to law.

_____
Bryan Mullady
Detective, New York City Police Department
Task Force Officer, Drug Enforcement Administration

Sworn to before me this
10th day of October, 2019

_____
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK